1 | Marc S. Cohen, CA Bar No. 65486
      *marccohen@kayescholer.com*
2 | Alicia Clough, CA Bar No. 260012
      *alicia.clough@kayescholer.com*
3 | KAYE SCHOLER LLP
   1999 Avenue of the Stars, Suite 1700
4 | Los Angeles, California 90067
   Telephone: (310) 788-1000
5 | Facsimile: (310) 788-1200

6 | Attorneys for The Official Committee of Unsecured
   Creditors

7

8

9

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| In re | ) | Case No. 2:08-bk-32208-BR |
|---|---|---|
| Yari Film Group Releasing, LLC, | ) | Chapter 11 |
| Debtor. | ) | **SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COMMITTEE'S MOTION FOR ORDER COMPELLING WINTHROP COUCHOT TO COMPLY WITH WRIT OF EXECUTION AND LEVY [Docket No. 296]** |
| | ) | **[Notice of Hearing and Request for Judicial Notice Filed Concurrently Herewith]** |
| | ) | Date: June 2, 2010 |
| | ) | Time: 10:00 a.m. |
| | ) | Ctrm: 1668 |

23287743.DOC

KAYE SCHOLER LLP

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ......................................................................................... 1

II.   STATEMENT OF FACTS ............................................................................ 3

III.  ARGUMENT ............................................................................................... 5

    A.    The Retainer Is Property of Davand .................................................. 5

    B.    The Retainer Is Not Property of the Estate ....................................... 6

    C.    Winthrop Couchot Does Not Have a Security Interest in the Retainer
        Because the Retainer Is Not a Security Retainer ................................ 7

        1.    The Retainer Is Not a Security Retainer ................................ 7

        2.    The Retainer Is Not an Advance Payment Retainer ............... 10

    D.    Winthrop Couchot Does Not Have an Attorneys' Lien ..................... 11

    E.    The Committee Has an Execution Lien on the Retainer ..................... 13

    F.    The Court Has Authority Over Fees Paid by Third Parties ................ 13

IV.   CONCLUSION ............................................................................................ 14

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Baranowski v. State Bar,*
   24 Cal. 3d 153 (1979) ............................................................................. 10

*Barron v. Countryman,*
   432 F.3d 590 (5th Cir. 2005) .................................................................. 10

*Cetenko v. United California Bank,*
   30 Cal. 3d 528 (1982) ............................................................................. 11

*Cristopher v. Mir (In re BOH! Ristorante, Inc.),*
   99 B.R. 971 (9th Cir. BAP 1989) .............................................................. 6

*Gelfand, Greer, Popko & Miller v. Shivener,*
   30 Cal. App. 3d 364 (1973) ................................................................... 11

*In re C & P Auto Transport, Inc.,*
   94 B.R. 682 (Bankr. E.D. Cal. 1988) .................................................. 5, 10

*In re Furniture Corp. of Am.,*
   34 B.R. 46 (Bankr. S.D. Fla. 1983) ....................................................... 13

*In re Heritage Mall Associates,*
   184 B.R. 128 (Bankr. D. Or. 1995) ....................................................... 10

*In re Kisseberth,*
   273 F.3d 714 (6th Cir. 2001) ................................................................. 13

*In re McDonald Bros. Constr., Inc.,*
   114 B.R. 989 (Bankr. N.D. Ill. 1990) ...................................................... 6

*In re Montgomery Drilling Co.,*
   121 B.R. 32 (Bankr. E.D. Cal. 1990) .................................................. 7, 10

*In re Monument Auto Detail, Inc.,*
   226 B.R. 219 (9th Cir. BAP 1998) ......................................................... 12

*In re Stoecker,*
   114 B.R. 965 (Bankr.N.D.Ill.1990) ......................................................... 6

*In re Zukoski,*
   237 B.R. 194 (Bankr. M.D. Fla. 1998) ................................................... 6

*Isrin v. Superior Court,*
   63 Cal. 2d 153 (1965) ............................................................................. 12

*Law Offices of Stanley J. Bell v. Shine, Browne & Diamond,*
   36 Cal. App. 4th 1011 (1995) ................................................................ 12

*T & R Foods, Inc.,*
   47 Cal. App. 4th Supp. 1 (1996) ............................................................ 10

KAYE SCHOLER LLP

*Trimble v. Steinfeldt,*
  178 Cal. App. 3d 646 (1986) ........................................................ 12

**Statutes**

11 U.S.C. § 327 ............................................................................... 6, 12

11 U.S.C. § 329 ............................................................................... 6, 13

11 U.S.C. § 541 ............................................................................... 6

Cal. Civ. Code § 2881 ..................................................................... 11

Cal. Civ. Code §§ 3051, 3110 ......................................................... 11

Cal. Civ. Proc. Code § 697.710 ...................................................... 13

Cal. Civ. Proc. Code § 701.030(a) ................................................. 4

California Rule of Professional Conduct 3-300 ............................. 9

California Rule of Professional Conduct 4-100 ......................... 9, 10

FRBP 2014 ..................................................................................... 12

**Other Authorities**

1 Witkin, Cal. Procedure (4th ed. 1996) Attorneys, § 192 ......... 11, 12

KAYE SCHOLER LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SUPPLEMENTAL MEM. OF P&A IN SUPP. OF MOT. FOR ORDER COMPELLING COMPLIANCE WITH WRIT AND LEVY

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, WINTHROP COUCHOT, AND CERTAIN PARTIES-IN-INTEREST:**

The Official Committee of Unsecured Creditors in the above-captioned case (the "Committee") hereby files this supplemental memorandum of points and authorities in support of the Committee's motion for an order compelling Winthrop Couchot to comply with the Writ and Levy (Docket No. 296, the "Motion").[1]  For the reasons set forth herein, the Committee respectfully requests that the Court grant the Motion and require the turnover of the Retainer pursuant to the Writ and the Levy.

## SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

Winthrop Couchot is currently holding in its client trust account $84,149.80 in funds belonging to Davand which were not encumbered at the time of the funds' deposit but which became subject to the Committee's execution lien on March 30, 2010.  The funds are not subject to any prior lien in favor of Winthrop Couchot, nor are they property of the Persik estate.  The funds were never property of Persik, and Persik did not have an interest in the funds at the time of filing.  It was never contemplated that the funds would become estate property.  The funds remain property of Davand, an entity currently in contempt of this Court's order.

On November 23, 2009, the Court entered the Sanctions Order, which requires various affiliates of Yari Film Group Releasing, LLC (the "Debtor") to pay $127,994.59 to the Committee within 90 days of the entry of the order.  When those affiliates refused to comply with the Sanctions Order, the Committee obtained the Writ from this Court and subsequently served the Levy upon Winthrop Couchot in connection with the $84,149.80, the amount remaining from the Retainer in the amount of $100,000 transferred to the firm by Davand.

---

[1] Capitalized terms not defined herein shall have the same meaning ascribed to them in the Motion.

KAYE SCHOLER LLP

KAYE SCHOLER LLP

1        Winthrop Couchot has refused to comply with the Writ and Levy, contending that the firm

2  has a valid and prior security interest in the Retainer. It does not. The Retainer was not a security

3  retainer. In California, a valid security retainer must be in writing and must comply with the

4  California Rules of Professional Conduct. The retainer agreement between Winthrop Couchot and

5  Persik fails on both counts. According to the California Practice Guide on Professional

6  Responsibility, such a writing must make clear that the client acknowledges that he/she

7  understands and agrees to the terms of the security arrangement. Here, the letter from Winthrop

8  Couchot to Dennis Brown regarding Persik's retention of the firm (the "Retainer Letter") contains

9  no mention of any security arrangement. *See* Request for Judicial Notice Filed Concurrently

10  Herewith ("RJN"), Exh. A. Accordingly, Winthrop Couchot did *not* establish a valid security

11  retainer in writing, and, indeed, Persik conceded in its reply to the Committee's opposition to the

12  firm's employment application that there was nothing in the Retainer Letter establishing that the

13  Retainer was a security retainer.

14        Moreover, the Retainer is not property of the Persik estate. The Retainer was paid to

15  Winthrop Couchot by a third party, Davand, rather than by Persik. Although a prepetition retainer

16  ordinarily becomes property of a bankruptcy estate under § 541, if the source of a prepetition

17  retainer collected by a debtor's attorneys is a third party other than the Chapter 11 debtor, then the

18  prepetition retainer does not become part of bankruptcy estate. The Retainer Letter, dated January

19  14, 2010, is between Winthrop Couchot and Persik, not Winthrop Couchot and Davand. Indeed,

20  Davand is not mentioned at all in the Retainer Letter. Davand's name does not appear in the

21  parties' employment documents until the one-page "Waiver of Conflicts" executed on February 8,

22  2010, nearly one month after the date of the Retainer Letter. *See* RJN, Exh. B. The Waiver of

23  Conflicts does not contain any reference to a security interest in Davand's assets or the transferred

24  funds. There is no evidence of any intent to establish a security arrangement on behalf of Winthrop

25  Couchot with respect to Davand's assets or with respect to the transferred funds.

26        Further, Winthrop Couchot does not have an attorneys' lien against the Retainer. Under

27  California law, an attorneys' lien can only be created in two ways: (1) by an express provision in

28  the attorney fee contract, or (2) by implication where the retainer agreement provides that the

23287743.DOC                2

1   attorney is to look to a judgment for payment for legal services rendered.  Neither of these

2   requirements is present in the Retainer Letter between Winthrop Couchot and Persik.

3          Without a security interest in or an attorneys' lien against the Retainer, Winthrop Couchot

4   does not have an interest in the Retainer superior to the Committee's execution lien.  Having levied

5   on the funds held by Winthrop Couchot on March 30, 2010, the Committee obtained an execution

6   lien on Davand's interest in the property, making the Committee's interest senior to any interest

7   Winthrop Couchot may have.

8          Finally, it would be inequitable to deny the Motion.  As evidenced by Davand's continued

9   funding of the Persik case, Davand has sufficient funds to comply with the Sanctions Order.  It has

10  simply chosen not to.  This blatant defiance of the Court's order should not be countenanced, and

11  the Court should compel the turnover of Davand funds currently held by Winthrop Couchot.  To do

12  otherwise would amount to authorizing Davand's abuse of the bankruptcy process.

## II.

### STATEMENT OF FACTS

15         On November 23, 2009, the Court entered the Sanctions Order.  *See* Docket No. 228.

16  Pursuant to the Sanctions Order, the Debtor's affiliates (as defined in the Sanctions Order) were

17  ordered to pay $127,994.59 to the Committee within 90 days of the entry of the order.  None of the

18  Debtor's affiliates have complied with the Sanctions Order.[2]

19  [2]  Persik may contend that the Sanctions Order should not be given any effect because the
         Debtor's affiliates have appealed.  The Sanctions Order is effective.  It was never stayed
20       pending appeal, nor did the affiliates seek a stay pending appeal.  Any suggestion that the
         Debtor's affiliates have been actively prosecuting the appeal of the Sanctions Order would
21       be disingenuous.  The District Court has entered two Notices of Discrepancy, both of which
         were long ignored by the Debtor and its affiliates.  On January 5, 2010, the District Court
22       entered a Notice of Discrepancy, indicating that Debtor's affiliates' notice of appeal was
         not timely filed.  *See* RJN, Exh. C.  The affiliates offered no response.  On April 22, 2010,
23       the District Court filed another Notice of Discrepancy, indicating that the affiliates had
         failed to file any of the requisite documents required to prosecute an appeal.  *See* RJN, Exh.
24       D.  Accordingly, on May 7, 2010, the Committee filed a motion to dismiss the appeal of the
         Sanctions Order for failure to prosecute.  *See* RJN, Exh. E.  That same day, the affiliates
25       finally began to file some of the requisite documents required to prosecute an appeal.
         However, such delay warrants dismissal, and the Committee intends to prosecute its motion
26  to dismiss, which will be heard by the District Court on June 24, 2010.  *See* RJN, Exh. F.

KAYE SCHOLER LLP

1        Because the Debtor's affiliates refused to comply with the Sanctions Order, the Committee

2    sought to levy against assets of certain affiliates of the Debtor, including the assets of Davand,

3    some of which are currently being held by Winthrop Couchot. On March 18, 2010, the Committee

4    filed an Affidavit and Request for Issuance of Writ of Execution against Davand (Docket No. 280,

5    the "Writ Request"). On March 24, 2010, having determined that Davand was an affiliate subject

6    to the Sanctions Order, the Court entered a Writ of Execution against Davand, effectively granting

7    the Writ Request (Docket No. 281, the "Writ"). The Court also entered an order pursuant to Local

8    Rule 7064-1(b) authorizing service of the Writ by a registered process server in lieu of the United

9    States Marshals Office (Docket No. 284, the "Service Order").

10       On March 30, 2010, pursuant to the Service Order, the Writ, along with a Notice of Levy

11    on the Retainer (the "Levy"), were served on Winthrop Couchot. Winthrop Couchot requested,

12    and the Committee granted, an extension on its deadline to provide a garnishee's memorandum as

13    required by California Code of Civil Procedure § 701.030(a). On April 14, 2010, Winthrop

14    Couchot submitted its "Garnishee's Memorandum" to the Committee, contending that the firm has

15    no legal obligation to deliver any amount of the Retainer in response to the Levy and the Writ. *See*

16    RJN, Exh. G.[3]

17    ///

18    ///

19    ///

---

[3]    Winthrop Couchot's "Garnishee's Memorandum" was attached as an exhibit to the declaration of Robert Opera (the "Opera Declaration") in support of Persik's reply to the opposition to Winthrop Couchot's employment application. The Garnishee's Memorandum begins at pages 10 of 64 within the Opera Declaration, which is attached as Exhibit G to the Request for Judicial Notice filed concurrently herewith.

KAYE SCHOLER LLP

### III.

### ARGUMENT

**A.      The Retainer Is Property of Davand.**

The material provisions of the Retainer Letter provide:

> The Firm has requested from Persik a retainer in the amount of $100,000 ("Retainer"). The Retainer will be used to pay the Firm for the services that the Firm will render and for the costs that the Firm will incur in connection with its representation of Persik in Persik's Chapter 11 case.

> The Firm's agreement to represent Persik in Persik's Chapter 11 case for the amount of the Retainer is subject to the Bankruptcy Court's approval of the other financial arrangements provided for by this retainer letter, including the monthly payment procedures described herein. In the event that the Bankruptcy Court does not authorize the material financial arrangements provided for by this retainer letter, the Firms reserves the right to requires that Persik provide to the Firm other financial arrangements satisfactory to the Firm, or to seek to withdraw as counsel for Persik in Persik's Chapter 11 case.

RJN, Exh. A at 2.

In its reply to the Committee's opposition to Winthrop Couchot's employment application, Persik contends that the Retainer is not property of Davand because Davand paid the Retainer to the firm "irrevocably and unconditionally." *See* RJN, Exh. H at 21, ln. 10. Persik provided no evidentiary support for its this position beyond the self-serving declaration of Mr. Yari. *See* RJN, Exh. I, ¶ 3. The words "irrevocable" and "unconditional" are nowhere to be found in the Retainer Letter. Nor is the word "nonrefundable." The Retainer Letter provides no indication that the parties intended that ownership of the Retainer would be transferred to Winthrop Couchot irreversibly. To the contrary, the Retainer Letter expressly provides that Persik will be required to find an alternate source of funding to pay Winthrop Couchot's fees if the Court denies Persik's proposed financing arrangement. Thus, rather than establishing that Davand's payment to Winthrop Couchot was "irrevocable," the inclusion of this provision plainly contemplates that the parties understood that the Retainer might have to be returned to Davand.

Moreover, it is debatable whether a retainer can <u>ever</u> be deemed "nonrefundable" in the bankruptcy context. In *In re C & P Auto Transport, Inc.,* 94 B.R. 682 (Bankr. E.D. Cal. 1988), the court held that a fee described as "nonrefundable" and paid prepetition would be subject to refund or discount under several provisions of the Bankruptcy Code, so that an allegedly "nonrefundable"

KAYE SCHOLER LLP

1    fee may not be used in an attempt to circumvent the fee application requirement to which

2    professionals appointed to represent the estate under 11 U.S.C. § 327 are subject, nor can this

3    device be used to try to circumvent the reasonableness of value inquiry provided for in 11 U.S.C.

4    § 329. The court explained that the additional provisions for scrutiny (leading to potential court

5    ordered fee refunds) that exist in the bankruptcy context actually mean no fee is nonrefundable in a

6    bankruptcy case. *Id.* Thus, it is not clear that the nature of the transaction Mr. Yari claims to have

7    intended would be permissible, even if the Retainer Letter had contained any mention of such

8    terms.

9        **B.    The Retainer Is Not Property of the Estate.**

10       Ordinarily, a prepetition retainer becomes property of a bankruptcy estate under § 541 of

11   the Bankruptcy Code. However, if the source of a prepetition retainer collected by a debtor's

12   attorneys is a third party other than the Chapter 11 debtor, then the prepetition retainer does not

13   become part of bankruptcy estate. *In re Zukoski,* 237 B.R. 194, 197 n. 4 (Bankr. M.D. Fla. 1998);

14   *see also Cristopher v. Mir (In re BOH! Ristorante, Inc.),* 99 B.R. 971, 973 (9th Cir. BAP 1989)

15   (finding that fees paid by a third party to a professional employed by a debtor-in-possession were

16   not property of the estate and could be recovered by the third party); *In re Stoecker,* 114 B.R. 965,

17   977-78 (Bankr.N.D.Ill.1990) (finding that a fee applicant's supplemental retainer paid by a third

18   party was not property of the estate under § 541 and that the bankruptcy court could order

19   disgorgement of the supplemental retainer to the third party). "A prepetition retainer becomes

20   property of the estate upon the filing of a bankruptcy case only if, under applicable state law, the

21   debtor has an interest in the retainer at the time of filing." *In re McDonald Bros. Constr., Inc.,* 114

22   B.R. 989 (Bankr. N.D. Ill. 1990).

23       Persik's reply to the Committee's opposition to the firm's employment application

24   completely glosses over the fact that the Retainer was paid by a nondebtor third party. The funds

25   used to pay the Retainer passed directly from Davand to Winthrop Couchot; they were not passed

26   from Davand to Persik to Winthrop Couchot. *See* RJN, Exh. J at ¶ 19 ("Davand paid to the Firm,

27   on behalf of the Debtor, the Firm's Retainer in this case."). The funds were never property of

28   Persik. Persik did not have an interest in the funds at the time of filing. It was never contemplated

KAYE SCHOLER LLP

1  that the funds would become estate property. Because the source of the Retainer collected by

2  Winthrop Couchot is a third party other than Persik the Retainer did not become part of Persik's

3  estate.

4       **C.**     **Winthrop Couchot Does Not Have a Security Interest in the Retainer Because**

5            **the Retainer Is Not a Security Retainer.**

6       Under applicable law, there are three forms of retainer payments made to attorneys: (1)

7  "classic" or "true" retainers, (2) security retainers, and (3) advance payment retainers. *In re*

8  *Montgomery Drilling Co.,* 121 B.R. 32, 37 (Bankr. E.D. Cal. 1990). A "classic retainer" refers to

9  the payment of a sum of money to secure availability over a period of time. *Id.* Entitlement to the

10  fee exists whether or not services are ever rendered. *Id.* The second form of retainer — a "security

11  retainer" — is typified by the fact that the retainer will be held by the attorneys to secure payment

12  of fees for future services that the attorneys are expected to render. In such an agreement, the

13  money given as a retainer is not present payment for future services; rather, where the retainer was

14  paid by the debtor, it remains property of the debtor until the attorney applies it to charges for

15  services actually rendered, and any unearned funds are returned to the debtor. *Id.* Finally, an

16  "advance payment retainer" is an agreement whereby the debtor pays, in advance, for some or all

17  of the services that the attorney is expected to perform on the debtor's behalf.

18       Here, neither party contends that the Retainer was a "classic" or "true" retainer. Thus, the

19  issue is whether the Retainer is a security retainer or an advance payment retainer. As set forth

20  below, the Retainer is neither. It was not a payment from a client to an attorney. Davand is not

21  Winthrop Couchot's client. The Retainer does not fall neatly into either category; it was simply a

22  transfer of funds from a nondebtor third party, held by Winthrop Couchot.

23       1.     The Retainer Is Not a Security Retainer.

24       Persik contends that the Retainer is a Security Retainer. However, in California, a valid

25  security retainer must be in writing and comply with the California Rules of Professional Conduct.

26  *See* RJN, Exh. K at 46. In this case, Winthrop Couchot did not establish a valid security retainer in

27  writing. Persik concedes in its reply to the Committee's opposition to Winthrop Couchot's

28  employment application that there was nothing in Persik's retainer agreement establishing that the

KAYE SCHOLER LLP

1    retainer was a security retainer. *See* RJN, Exh. G at ¶¶ 29-30.  Nonetheless, Persik contends that

2    the firm's failure to set forth in writing that the Retainer is a security retainer should be

3    disregarded, given that the explanation of the nature of the Retainer in the Retainer Letter and in

4    Winthrop Couchot's employment application purportedly establishes that the Retainer is a security

5    retainer. *See* RJN, Exh. G at ¶¶ 29-30.

6        In support of its position that the Retainer is a security retainer, Persik points out that

7    Winthrop Couchot agreed to make the Retainer subject to the guidelines set forth by the Office of

8    the United States Trustee (the "UST Guidelines"). *See* RJN, Exh. H at 22. This suggestion is

9    illogical for several reasons.  First, Persik states that the UST Guidelines apply only to security

10   retainers, and not to classic retainers or advance payment retainers. *See id.*  To the extent that it is

11   even relevant, this contention is not supported by the plain language Persik cites in support of this

12   position.  Specifically, Persik notes that the UST Guidelines require an attorney to keep a retainer

13   that is "an advance against fees" in a segregated trust account, while no such segregation is

14   required if the retainer is "earned upon receipt." *See id.* at 22, n. 11.  That the UST Guidelines

15   mandate the use of a segregated trust account for one type of retainer but not for others does not

16   mean that the UST Guidelines somehow cease to apply to the latter forms of retainers.  Rather, the

17   UST Guidelines simply distinguish between the type of accounts required with respect to different

18   types of retainers.  There is no indication that classic or advance payment retainers are somehow

19   outside the jurisdiction of the UST Guidelines.

20       Second, Persik's reference to the UST Guidelines in Winthrop Couchot's employment

21   application was <u>not</u> in reference to the segregated trust account requirement imposed on security

22   retainers; it was in reference to the requirements regarding <u>disbursements</u>.  The application simply

23   stated: "no disbursements will be made . . . except only in accordance with the [UST Guidelines]."

24   *See id.,* Exh. G, ¶ 9.  The application did not represent that the firm would segregate the funds as

25   required by the UST Guidelines with respect to security retainers.  Thus, Persik cannot contend that

26   Winthrop Couchot's intention to establish a security retainer should be inferred by the application's

27   representation that the firm would comply with the UST Guidelines.  In any event, regardless of the

28   requirements set forth in the UST Guidelines, California law requires that <u>all</u> funds received or held

23287743.DOC                                    8

KAYE SCHOLER LLP

1    for the benefit of clients be deposited in a client trust account. *See* Rule 4-100 of the Rules of

2    Professional Conduct. Winthrop Couchot's placement of the funds in a segregated trust account

3    was required by California law, and the firm cannot contend that such placement provides some

4    sort of clue to the parties' intentions with respect to the nature of the retainer.

5        In fact, there is simply no reference in the Retainer Letter to any type of security

6    arrangement between Davand and Persik. Winthrop Couchot has not complied with the writing

7    requirement that is necessary to establish a valid security retainer according to California law.

8    Because the Retainer Letter fails to include any language regarding the Retainer being a security

9    retainer or subject to any sort of security arrangement, Persik and Winthrop Couchot cannot now

10    argue retroactively that the Retainer was <u>meant</u> to be a security retainer. California law requires

11    that such an arrangement be set forth in writing. Specifically, California Rule of Professional

12    Conduct 3-300 requires an attorney seeking to obtain a security interest to "fully comply" with the

13    following three requirements:

14      1.    The transaction and terms of the acquisition are fair and reasonable to the
client and are transmitted to the client in a manner and under terms which

15             should have been reasonably understood by the client;

16      2.    The client is given a reasonable opportunity to seek the advice of
independent counsel on the transaction; and

     3.    The client consents in writing to the transaction.

17

18        California Rule of Professional Conduct 3-300; *see* RJN, Exh. K at 46. Here, Winthrop

19    Couchot never obtained its client's consent in writing to any purported security interest as required

20    by California law. Having failed to do so, Winthrop Couchot is barred from asserting any such

21    interest in the Retainer. The Retainer Letter, dated January 14, 2010, is between Winthrop

22    Couchot and Persik, not Winthrop Couchot and Davand. Davand is not mentioned at all in the

23    Retainer Letter. Indeed, Davand's name does not appear in the parties' employment documents

24    until the one-page Waiver of Conflicts executed on February 8, 2010, nearly one month after the

25    date of the Retainer Letter. *See* RJN, Exh. B. The Waiver of Conflicts contains no reference to a

26    security interest in Davand's assets or in the transferred funds. There is no evidence of any intent

27    to establish a security arrangement on behalf of Winthrop Couchot with respect to Davand's assets

28    or with respect to the transferred funds.

KAYE SCHOLER LLP

2.    The Retainer Is Not an Advance Payment Retainer.

An advance payment retainer arises in situations where a debtor pays, in advance, for some or all of the services that the attorney is expected to perform on the debtor's behalf. *See, e.g., In re Heritage Mall Associates,* 184 B.R. 128 (Bankr. D. Or. 1995); *In re C & P Auto Transport, Inc.,* 94 B.R. 682 (Bankr. E.D. Cal. 1988) (finding that a $5,000 retainer was "in consideration of services to be rendered in the future" by the attorney to the client and thus was "an advance deposit on account of anticipated fees for future services.").

Funds that a debtor's attorney collects prepetition as an advance payment retainer do not become "property of the estate" upon commencement of bankruptcy case. *Barron v. Countryman,* 432 F.3d 590 (5th Cir. 2005). Under California law, advance payment retainers belong to the client until earned. *In re Montgomery Drilling Co.,* 121 B.R. 32, 38 (Bankr. E.D. Cal. 1990) (finding that funds retain an ownership identity with the client until earned and stating "this Court finds and holds that under [former] Rule 8-101, the funds placed as a retainer were funds held by Applicant for the benefit of Debtor."); *see also T & R Foods, Inc.,* 47 Cal. App. 4th Supp. 1, 8 (1996) ("In reviewing former *California Rules of Professional Conduct 8-101,* this Court views the language contained therein as indicating an intent by the State Bar that funds retain an ownership identity with the client until earned. This also comports with the view of the San Francisco Bar Legal Ethics Opinion SF 1980-1; [citation].").[4]

Under California law, the issue of whether ownership of the funds used to pay an advance payment retainer passes to the attorney upon receipt is largely undecided. In *Baranowski v. State Bar,* 24 Cal. 3d 153, 164 (1979), the California Supreme Court expressly declined to decide "the question of whether or not an advance fee payment is correctly characterized as money 'received or held for the benefit of clients.'"

In this case, the retainer is not an advance payment retainer. It was simply an arrangement between Winthrop Couchot and Davand, a nondebtor third party that advanced funds to Winthrop

---

[4] *California Rules of Professional Conduct 4-100* replaced *rule 8-101* as of May 27, 1989.

KAYE SCHOLER LLP

1   Couchot. If the Court declined to approve the proposed fee arrangement, the funds would simply

2   be returned to Davand. The Retainer is nothing more than a transfer of funds from a nondebtor

3   third party. The funds are simply being held by Winthrop Couchot. Winthrop Couchot never

4   obtained an ownership interest in the funds.

5        Even if the Court were to find that the Retainer is an advance payment retainer, it is well

6   within the Court's equitable discretion to determine that the Davand funds did not pass to Winthrop

7   Couchot upon receipt, given that California law is unsettled with respect to the issue of whether

8   ownership of funds used to pay an advance payment retainer passes to the attorney upon receipt,

9   and, in particular, given the circumstances of this case. Rather, even if the Retainer were an

10  advance payment retainer, under California law, the Retainer would remain property of Davand

11  unless and until the Court authorized the payment of the funds from Davand to Winthrop on

12  Persik's behalf as compensation for services rendered for Persik. However, the Retainer is simply

13  property of Davand, being held in trust by Winthrop Couchot, and the Committee's execution lien

14  gives the Committee an interest senior to any interest Winthrop Couchot may have.

15      **D.**    **Winthrop Couchot Does Not Have an Attorneys' Lien.**

16        An attorneys' lien may be created by contract or by operation of law. Cal. Civ. Code

17  § 2881. In most jurisdictions a lien is established by operation of law in favor of an attorney to

18  satisfy attorney fees and expenses out of the proceeds of a prospective judgment. *See* 1 Witkin,

19  Cal. Procedure (4th ed. 1996) Attorneys, § 192 at 248. In California, however, an attorneys' lien is

20  created <u>only</u> by an express provision in the attorney fee contract (*Cetenko v. United California*

21  *Bank,* 30 Cal. 3d 528, 531 (1982)) or by implication where the retainer agreement provides that the

22  attorney is to look to a judgment for payment for legal services rendered (*Gelfand, Greer, Popko &*

23  *Miller v. Shivener,* 30 Cal. App. 3d 364, 375, 377 (1973)). Unlike a service lien or a mechanic's

24  lien, for example (Civ. Code §§ 3051, 3110), an attorneys' lien is <u>not</u> created by the mere fact that

25

26

27

28

KAYE SCHOLER LLP

1  an attorney has performed services in a case. *Isrin v. Superior Court*, 63 Cal. 2d 153, 157 (1965);

2  *see generally* 1 Witkin, Cal. Procedure, Attorneys, §§ 192-193 at 248-49.[5]

3        Because an attorneys' lien is not automatic and requires a contract for its creation, a direct

4  contractual relationship between the attorney and the client is essential.  When a client enters into a

5  retainer agreement with one particular attorney, a lien in favor of another, albeit associated attorney

6  is neither express nor implied and does not exist. *Law Offices of Stanley J. Bell v. Shine, Browne*

7  *& Diamond*, 36 Cal. App. 4th 1011, 1019 (1995) ; *Trimble v. Steinfeldt*, 178 Cal. App. 3d 646, 651

8  (1986).

9        In this case, Winthrop Couchot does not have an attorneys' lien against the Retainer.  The

10  Retainer Letter does not contain an express provision creating an attorneys' lien, nor does the

11  Retainer Letter indicate that Winthrop Couchot is to look to a judgment for payment for legal

12  services rendered.  Under California law, these are the only two methods for establishing an

13  attorneys' lien.  Neither method was employed by Winthrop Couchot in the Retainer Letter.

14  Moreover, there is no direct contractual relationship between Winthrop Couchot and Davand.  In

15  the "Waiver of Conflicts," Davand specifically acknowledged that it was not a client of Winthrop

16  Couchot's, indicating that the sole attorney-client contractual relationship was between Winthrop

17  Couchot and Persik. *See* RJN, Exh. B.  A direct contractual relationship is essential to the creation

18  of a valid attorneys' lien.  Accordingly, Winthrop Couchot does not have an attorneys' lien.

19  ─────────────

20  [5]    Moreover, even if a firm has a valid attorneys' lien, a firm's attorneys' lien "secures only
the amount of fees and costs specifically allowed by the bankruptcy court, *not* the amount
of the entire retainer." *In re Monument Auto Detail, Inc.,* 226 B.R. 219, 225 (9th Cir. BAP
21     1998) (emphasis in original).  An attorney's possession of a lien on the funds received from
a debtor does not obviate the obligation to satisfy the employment and compensation
22     requirements of § 327 and FRBP 2014. *Id.* In *Monument Auto Detail,* a law firm
contended that its possession of a valid attorneys' lien entitled it to retain a entire $20,000
23     retainer in its entirety.  The Ninth Circuit BAP concluded otherwise, noting that adopting
the firm's position "would render the employment and compensation requirements of the
24     Code and Rules meaningless." *Id.* Thus, even if the Retainer is a security retainer, and
even if Winthrop had a valid attorneys' lien, the lien would only be in the amount of fees
25     and costs the Court has specifically authorized.  At this time, the Bankruptcy Court has not
yet authorized the payment of any fees or costs.  Accordingly, the attorneys' lien is in the
26     amount of $0, and the funds have not yet become property of Winthrop.

27

28

KAYE SCHOLER LLP

1    Lacking an attorneys' lien or a security interest in the Retainer, Winthrop Couchot cannot contend

2    that it has an interest in the Retainer senior to the Committee's. It is fully within the Court's

3    discretion to order the turnover of the Retainer to satisfy the Sanctions Order, pursuant to the Writ

4    and the Levy.

5        **E.    The Committee Has an Execution Lien on the Retainer.**

6        A levy on property under a writ of execution creates an execution lien on the judgment

7    debtor's interest in the property. Cal. Civ. Pro. § 697.710. The Committee has properly complied

8    with state law requirements in obtaining the Writ and then serving the Levy upon Winthrop

9    Couchot on March 30, 2010. Thus, the Committee, as a levying judgment creditor, has obtained a

10   lien on Davand's —the judgment debtor's — interest in the property. Because Winthrop Couchot

11   had no security interest in or attorneys' lien against the Retainer, the Committee's execution lien is

12   senior to any interest Winthrop Couchot may assert in the funds. Accordingly, Winthrop Couchot

13   is legally required to turn over the Retainer in compliance with the Writ and the Levy.

14       **F.    The Court Has Authority Over Fees Paid by Third Parties.**

15       Any payment to attorney for representing a debtor in connection with a bankruptcy

16   proceeding is reviewable by bankruptcy court, without regard to source of payment. *See, e.g., In re*

17   *Kisseberth,* 273 F.3d 714 (6th Cir. 2001). Under section 329(b)(2), the court is authorized to order

18   the return of payments to "the entity that made such payment." Thus, even if the property

19   transferred would not have come into the estate, the compensation paid to a debtor's attorney is

20   still subject to court review and, if appropriate, the court may order any excess compensation

21   returned to the party that made the payment. *In re Furniture Corp. of Am.,* 34 B.R. 46 (Bankr. S.D.

22   Fla. 1983).

23       It is well within the Court's authority to order the turnover of the Retainer. As a payment to

24   an attorney representing a Chapter 11 debtor in a case before this Court, the Retainer is reviewable

25   by the Court. The funds being held by Winthrop Couchot in its client trust account are <u>not</u> funds of

26   the Persik estate, nor do they belong to Winthrop Couchot, nor are they funds that are subject to

27   any prior liens in favor of Winthrop Couchot. Rather, the funds are unencumbered funds

28   belonging to Davand, an entity that is subject to the Court's Sanction Order. The Committee

KAYE SCHOLER LLP

1 respectfully submits that the Court should not countenance the funding of one bankruptcy case

2 before this Court by an entity that is currently in contempt of an order entered in another

3 bankruptcy case before the Court.  Further, subject to the Writ and the Levy, Winthrop Couchot is

4 simply required to turn over the funds.

### IV.

### CONCLUSION

7      For the reasons set forth herein, in the concurrently filed Request for Judicial Notice, and in

8 the Motion, the Committee requests that the Court enter an order compelling Winthrop Couchot to

9 turn over the funds in compliance with the Writ and the Levy.

Dated: May 12, 2010                    KAYE SCHOLER LLP


                                       By: /s/ Marc S. Cohen
                                       Marc S. Cohen
                                       Attorneys for The Official
                                       Committee of Unsecured Creditors

KAYE SCHOLER LLP

In re:  YARI FILM GROUP RELEASING, LLC

Debtor(s).

CHAPTER 11
CASE NUMBER 2:08-bk-32208-BR

**Note:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

1999 Avenue of the Stars, Suite 1700
Los Angeles, California  90067

The foregoing document described as **SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COMMITTEE'S MOTION FOR ORDER COMPELLING WINTHROP COUCHOT TO COMPLY WITH WRIT OF EXECUTION AND LEVY [Docket No. 296]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

☒   **I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On May 12, 2010, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

☒   **II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**

On May 12, 2010, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☒ Service information continued on attached page

☒   **III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to Fed. R. Civ. Proc. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 12, 2010 | Alicia Clough | /s/Alicia Clough |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

**FORM  Effective January 2009**

**KAYE SCHOLER** LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**I.      SERVED BY COURT VIA NOTICE OF ELECTRIC FILING ("NEF")**

- David E Ahdoot      dahdoot@bushgottlieb.com, tjimines@bushgottlieb.com

- Paul S Arrow      parrow@buchalter.com, ifs_filing@buchalter.com

- Sara Biegel      sbiegel@szabo.com

- Brian L Davidoff      , calendar@rutterhobbs.com;jreinglass@rutterhobbs.com

- Harrison J Dossick      harrison.dossick@kattenlaw.com

- Barney A Eskandari      bernard.eskandari@mto.com

- Mark E Felger      mfelger@cozen.com

- David B Golubchik      dbg@lnbrb.com

- Carl Grumer      cgrumer@manatt.com

- Peter J Gurfein      pgurfein@akingump.com

- Brian D Huben      brian.huben@kattenlaw.com, carole.levine@kattenlaw.com;
  donna.carolo@kattenlaw.com;laura.nefsky@kattenlaw.com

- Joseph A Kohanski      jkohanski@bushquinonez.com, tjimines@bushgottlieb.com

- Mette H Kurth      kurth.mette@arentfox.com

- Krikor J Meshefejian      kjm@lnbrb.com

- Patrick E Michela      pmichela@hillfarrer.com

- Elissa Miller      emiller@sulmeyerlaw.com

- Behzad Nahai      bnahai@nahailawgroup.com

- Eric Peterson      rhummer@hinshawlaw.com; scox@hinshawlaw.com;
  cbuchanan@hinshawlaw.com; mwood@hinshawlaw.com; tlitza@hinshawlaw.com

- Daniel Pouladian      dpouladian@akingump.com

- Thomas H Prouty      thomas.prouty@troutmansanders.com,
  tina.diego@troutmansanders.com

- Jeffrey S Renzi      jrenzi@ssd.com, clopez@ssd.com;ptsui@ssd.com

- J Alexandra Rhim      arhim@buchalter.com, smartin@buchalter.com

- Jeremy V Richards      jrichards@pszjlaw.com, bdassa@pszjlaw.com

- Bruce S Schildkraut      bruce.schildkraut@usdoj.gov

- Jeffrey S Shinbrot      shinbrot@earthlink.net

23287864.DOC

- Derrick Talerico     dtalerico@loeb.com, kpresson@loeb.com;ljurich@loeb.com

- Alan G Tippie     atippie@sulmeyerlaw.com, jbartlett@sulmeyerlaw.com

- United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov

- Jason Wallach     jwallach@gladstonemichel.com

- Pamela Kohlman Webster     pwebster@buchalter.com

**II.     SERVED BY U.S. MAIL OR OVERNIGHT MAIL**

**Served By U.S. Mail**:

| **Chapter 11 Trustee** | **Debtor's Counsel** |
|---|---|
| R. Alexander Pilmer | David B. Golubchik |
| Kirkland & Ellis LLP | Levene Neal Bender Rankin & Brill LLP |
| 333 South Hope Street | 10250 Constellation Boulevard, Suite 1700 |
| Los Angeles, CA 90071 | Los Angeles, CA 90067 |

**Debtor**                                   **Winthrop Couchot**
Elizabeth A. Bell                        Robert E. Opera
Yari Film Group Releasing, LLC           Winthrop Couchot Professional Corporation
10850 Wilshire Boulevard, 6th Floor      660 Newport Center Drive, Fourth Floor
Los Angeles, CA 90024                    Newport Beach, CA 92660
                                         Proposed Counsel to Persik Productions, Inc.

J. Scott Douglass                        Russell Clementson
909 Fanning, Suite 1800                  Office of the U.S. Trustee
Houston, TX 77010                        725 S. Figueroa Street, Suite 2600
                                         Los Angeles, CA  90017

Penelope Parmes
Rutan & Tucker
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, CA 92626-1931

**III.     SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL**

**Served By Personal Delivery**:

The Honorable Barry Russell
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street
Bin Outside of Suite 1660
Los Angeles, CA 90012

KAYE SCHOLER LLP

23287864.DOC